## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Stephen Wayne Pigg, Jr.,<br><br>_____Debtor. | Case No. 13-07511-dd<br><br>Adv. Pro. No. 14-80037-dd<br><br>Chapter 13 |
| Joy S. Goodwin, Trustee,<br><br>_____Plaintiff,<br><br>v.<br><br>Custom American Auto Parts, LLC; Charlene Neisler; Stephen Wayne Pigg, Jr.; and Leader Industries,<br><br>_____Defendants. | **ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

This matter is before the Court on the motion for default judgment filed by the plaintiff, Joy S. Goodwin, Trustee ("Plaintiff"). In the amended complaint Plaintiff filed in this adversary proceeding, she seeks the avoidance of certain allegedly fraudulent transfers under 11 U.S.C. § 548(a) and the turnover of certain property under 11 U.S.C. § 542(a). Plaintiff named Custom American Auto Parts, LLC; Charlene Neisler; Stephen Wayne Pigg, Jr.; and Leader Industries as defendants. Jurisdiction for this proceeding is premised upon 28 U.S.C. §§ 1334 and 157(a). Venue is proper under 28 U.S.C. § 1409. This adversary proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(H).

Plaintiff filed a certificate of service indicating she served Defendants. No answers were filed, and the Clerk's Office entered Defendants' default on May 20, 2014. Plaintiff moved for entry of a default judgment pursuant to Federal Rule of Civil Procedure 55(b), made applicable by Federal Rule of Bankruptcy Procedure 7055. Plaintiff served her motion for default judgment on Defendants, and no responses were filed. As a result of Defendants default, they have

1

admitted Plaintiff's "well-pleaded allegations of fact" in the amended complaint. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

## <u>AUTHORITY TO ENTER A FINAL ORDER</u>

This Court previously has concluded that its entering a final order or judgment on a fraudulent conveyance claim against a noncreditor would be inconsistent with Article III of the United States Constitution without the express consent of the parties. *See Vieira v. Clutts* (*In re Clutts*), C/A No. 13-00184-DD, Adv. Pro. No. 13-80068-DD, p. 2 (Bankr. D.S.C. Dec. 6, 2013) (citing *Stern v. Marshall*, -- U.S. --, 131 S. Ct. 2594, 2609 (2011); *Granfinanciera v. Nordberg*, 492 U.S. 33, 43-47 (1989); *Official Comm. of Unsecured Creditors v. Nat'l Patent Dev. Corp.* (*In re TMG Liquidation Co.*), C/A No. 7:12-629-TMC, 2012 WL 1986526, at *2 (D.S.C. June 4, 2012); *Lain v. Erickson* (*In re Erickson Ret. Cmty, LLC*), Bankruptcy No. 09-37010-sg11, Civil No. WDQ-11-3736, 2012 WL 1999493, at *3 (D. Md. June 1, 2012); *McCarthy v. Wells Fargo Bank, N.A* (*In re El-Atari*), No. 1:11cv1090 (LMB/IDD), 2011 WL 5828013, at *2-*4 (E.D. Va. Nov. 18, 2011)). Consequently, in the absence of consent or some contrary authority establishing otherwise, this Court will not enter a final order or judgment but rather submit proposed findings of fact and conclusions of law to the United States District Court for the District of South Carolina for review. *Executive Benefits Ins. Agency v. Arkison*, -- U.S. --, -- S. Ct. --, No. 12-1200, 2014 WL 2560461 (June 9, 2014) ("[W]hen a bankruptcy court is presented with [a claim designated for final adjudication in the bankruptcy court as a statutory matter but prohibited from proceeding in that way as a constitutional matter], the proper course is to issue proposed findings of fact and conclusions of law. The district court will then review the claim *de novo* and enter judgment. This approach accords with the bankruptcy statute and does not implicate the constitutional defect identified by *Stern*."); *In re Standing Order Concerning Title*

*11 Proceedings Referred Under Local Civil Rule 83.IX.01, Referral to Bankruptcy Judges*, Misc. No. 3:13-mc-00471-TLW (D.S.C. Dec. 5, 2013).  In the light of the fact that the Court is giving Plaintiff an opportunity to file a second amended complaint, Plaintiff, if she chooses, may attempt to obtain the consents of all the defendants to this Court entering a final order and judgment or provide authority demonstrating this Court has the authority to enter a final order and judgment.

## FACTS

1.      Defendant Stephen Wayne Pigg, Jr. ("Pigg") filed the chapter 13 bankruptcy underlying this adversary proceeding on December 19, 2013.  His bankruptcy is captioned *In re Stephen Wayne Pigg, Jr.*, Case Number 13-07511-dd, and is pending before this Court.

2.      Plaintiff is the chapter 13 trustee assigned to Pigg's bankruptcy case.

3.      Defendant Custom American Auto Parts, LLC ("CAAP, LLC") is a South Carolina limited liability company registered with the South Carolina Secretary of State on August 6, 2013.

4.      Defendant Charlene Neisler ("Neisler") is the sole member of CAAP, LLC. Plaintiff believes Pigg and Neisler had a close, personal relationship at some point prior to this adversary proceeding being filed.

5.      Defendant Leader Industries ("Leader") is a corporate defendant operating in Connecticut.

6.      Three years prior to filing for bankruptcy, Pigg owned and operated a business known as Dixie Monte Carlo Depot ("Dixie Depot") in Sanford, North Carolina.  In January 2011, Pigg entered into an agreement to sell the name Dixie Depot and other intellectual property to Leader for $500,000, to be paid in equal installments over a four-year period.

7.      In approximately January of 2011, around the same time he sold Dixie Depot, Pigg began operating a sole proprietorship selling automobile parts under the name "Custom American Auto Parts."  This business was not registered with the South Carolina Department of State and income from the business was listed in Pigg's personal tax returns using Internal Revenue Service Form 1040, Schedule C.

8.      On or about November 8, 2012, Pigg purchased two parcels of real property in Camden, South Carolina—1303 and 1309 Jefferson Davis Highway, Camden, South Carolina 29020 ("Jefferson Davis properties").  Plaintiff believes Pigg purchased these properties for more than $110,000 in cash.

9.      On or about May 14, 2013, Pigg transferred title to the Jefferson Davis properties to Neisler for five dollars ($5.00) as a gift.

10.      On or about August 6, 2013, Neisler registered CAAP, LLC with the South Carolina Secretary of State as a limited liability company.

11.      On or about September 24, 2013, Neisler transferred title to the Jefferson Davis properties to CAAP, LLC for no money.

12.      In approximately October of 2013, in contemplation of filing bankruptcy, Pigg transferred ownership of the following personal property to Neisler: a 2004 Chevrolet Corvette, a 1969 Dodge Coronet Superbee, a 1983 Chevrolet Monte Carlo, a 2005 Chevrolet Suburban, a 1993 Case 586E fork lift, a 2008 Box Trailer double axle 24 foot trailer, a 2007 Box Trailer double axle 24 foot trailer, a 2001 Box Trailer double axle vendor trailer, and a 1999 car trailer double axle.  Neisler paid nothing to Pigg for these items of personal property.

13.      Pigg filed his chapter 13 bankruptcy petition on December 19, 2013.

4

14.    In Pigg's initial statement of financial of affairs entered January 15, 2014, Pigg listed no gifts next to paragraph 7, which directed him to "[l]ist all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient." Docket entry 11 in case no. 13-07511-dd.  Pigg also listed none of the transfers described above in response to paragraph 10, which directed him to "[l]ist all other property, other than property transferred in the ordinary course of business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case."  *Id.*  In response to paragraph 18 regarding natures, locations and names of businesses, Pigg listed CAAP, LLC and stated "the business does not have inventory" or accounts receivable.  *Id.*  Pigg signed his statement of financial affairs under penalty of perjury.

15.    On or about December 20, 2013, Pigg, Neisler, and CAAP, LLC entered into a contract with Leader to sell certain classic GMC motor parts to Leader Industries for $300,000. This transaction consisted of Pigg transferring any interest he had in the parts, if any, to Neisler and CAAP, LLC and then Neisler and CAAP, LLC signing an asset purchase agreement and bill of sale with Leader.  The contract provided that Leader would pay CAAP, LLC the $300,000 upon delivery of the parts.

16.    On or about January 8, 2014, Leader issued a check payable to Pigg, Neisler, CAAP, LLC in the amount of $95,000.  This check was deposited into account number *1193 at First Community Bank of South Carolina.  The account was in the name of CAAP, LLC.  Pigg, Neisler, and CAAP, LLC endorsed the check.

17.    The Court, on February 18, 2014, entered an Order directing First Community Bank to retain control of the $95,000 to the extent these funds remained in account number *1193 pending further order of this Court.  Docket entry 22 in case no. 13-07511-dd.  Pigg was also directed, pending further order of this Court, "to maintain and not dispose of the automobile parts identified in Annex 1 of the Custom American Auto Parts/Leader Industries Asset Purchase Agreement dated December 20, 2013."  *Id*.  Parties were given seven (7) days to request reconsideration of the February 18, 2014 Order.  *Id*.  No party requested reconsideration.

18.    On or about February 21, 2014, Pigg, Neisler, and CAAP, LLC shipped additional parts to Leader.  The Court held a hearing on March 4, 2014, at which Pigg's counsel in his bankruptcy case consented to entry of an Order directing Leader to retain and hold the remaining $205,000 due to CAAP, LLC, Pigg, and/or Neisler for those parts in trust pending further order of this Court.  Docket entry 43 in case no. 13-07511-dd.  This Order, entered March 4, 2014, to which Pigg's counsel consented at the hearing, also contains a finding that "there is a reasonable basis to conclude that [Pigg] failed to abide by the terms of this Court's Ex Parte Order issued February 18, 2014 and transferred automobile parts to Leader Industries pursuant to an Asset Purchase Agreement signed on December 20, 2013."  *Id*.

19.    Pigg filed an amended statement of financial affairs in his bankruptcy case on March 20, 2014.  Docket entry 49 in case no. 13-07511-dd.  In this amended statement of financial affairs, Pigg again did not list any gifts in response to paragraph 7.  *Id*.  In response to paragraph 10 regarding transfers, Pigg listed the vehicles and trailers he transferred to Neisler in October 2013 and indicated he received nothing for these transfers.  *Id*.  Pigg valued the 2004 Chevrolet Corvette at $15,100; the 1969 Dodge Coronet Superbee at $5,000; the 1983 Chevrolet Monte Carlo at $1,000; the 2005 Chevrolet Suburban at $7,400; the 1993 Case 586E fork lift at

$6,000; the 2008 Box Trailer double axle 24 foot trailer at $1,500; the 2007 Box Trailer double

axle 24 foot trailer at $1,250; the 2001 Box Trailer double axle vendor trailer at $800; and the

1999 car trailer double axle at $800.  *Id.*  Pigg did not list the transfer of the Jefferson Davis

properties or any businesses he operated.  *Id.*  Again, Pigg signed this amended statement of

financial affairs under penalty of perjury.

20.     Pigg and his bankruptcy attorney signed a consent order entered April 1, 2014,

which states he transferred the Jefferson Davis properties to Neisler and CAAP, LLC.  Docket

entry 63 in case no. 13-07511-dd.  As part of this consent order, Pigg agreed to "waive any

discharge of any debt under any Chapter of the Bankruptcy Code and agrees not to seek or obtain

such a discharge."  *Id.*

21.     Plaintiff filed this adversary proceeding on April 1, 2014.

22.     The Court entered a preliminary injunction on April 23, 2014, enjoining Neisler

from selling, encumbering or otherwise reducing the value of the Jefferson Davis properties and

the vehicles and trailers Pigg transferred to her in October 2013.  Docket entry 11.

<u>**ANALYSIS**</u>

Defendants having admitted the "well-pleaded allegations of fact" contained in Plaintiff's

amended complaint through their default, the issue before the Court is whether those allegations

support the relief sought in this action.  *Ryan*, 253 F.3d at 780.

**A. 11 U.S.C. § 548(a)**

Plaintiff, pursuant to 11 U.S.C. § 548(a), seeks to set aside the following transfers Pigg

made prior to his bankruptcy filing: the transfer of the Jefferson Davis properties to Neisler, the

transfer of vehicles and trailers in October 2013 to Neisler, and "any transfer of the name, assets,

inventory or other property of any nature, real or personal, of [Pigg's] proprietary business

known as 'Custom American Auto Parts'" to Neisler.  Plaintiff asserts these transfers should be avoided under section 548(a)(1)(A) and section 548(a)(1)(B).

Under 11 U.S.C. § 548(a)(1)(B), a "trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer . . . and . . . was insolvent on the date that such transfer was made . . . , or became insolvent as a result of such transfer . . . ."  Based on the allegations in the amended complaint deemed admitted through Defendants' default, Pigg transferred the Jefferson Davis properties to Neisler for $5 as a gift even though he paid in excess of $100,000 for the Jefferson Davis properties.  With respect to the vehicles and trailers Pigg transferred to Neisler in October 2013, Neisler paid nothing to Pigg for these items of personal property.  Additionally, paragraph 23 of the amended complaint, which is deemed admitted, alleges the transfer of the name, assets, inventory, and other property of any nature, real or personal, of Pigg's business, Custom American Auto Parts, to Neisler was not for value.  Consequently, there are sufficient allegations for the Court to conclude Pigg received less than reasonably equivalent value for these transfers.  Although not specifically alleged in the amended complaint, based on Pigg's bankruptcy schedules filed in his bankruptcy case which are signed under penalty of perjury, the Court could conclude Pigg was either insolvent at the time these transfers occurred or became insolvent as a result of the transfers.  Therefore, the transfers Plaintiff seeks to avoid could be set aside pursuant to section 548(a)(1)(B).

Alternatively, section 548(a)(1)(A) allows for avoidance of transfers made with "actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . , indebted . . . ."  Based on the well-pleaded allegations of

8

fact in the amended complaint which are deemed admitted, Pigg made the following transfers during the year preceding his bankruptcy filing: (1) the Jefferson Davis properties to Neisler for $5 as a gift in May 2013; (2) name, assets, inventory, and other property of his business transferred to Neisler; and (3) numerous vehicles and trailers to Neisler in October 2013 for no consideration.  Plaintiff has alleged Pigg and Neisler had a close, personal relationship prior to his bankruptcy.  Based on Pigg's initial statement of financial affairs signed under penalty of perjury, he failed to list all of the transfers at issue.  He also indicated he had an interest in CAAP, LLC and stated this business had no inventory and accounts receivable even though the business sold $300,000 worth of parts the day after his bankruptcy filing and was owed $300,000 for those parts.  These facts establish many of the badges of fraud this Court often examines when determining whether a transfer was made with actual intent to hinder, delay, or defraud. *See In re Seymour*, C/A No. 10-00377-jw, 2010 WL 9597117, at *3-*4 (Bankr. D.S.C. Aug. 16, 2010); *Adams v. Filter* (*In re Filter*), No. CIV.A. 99-04462-W, 2000 WL 33710873, at *5 (Bankr. D.S.C. June 15, 2000).  Moreover, Plaintiff alleges in the amended complaint that the transfers of the vehicles and trailers in October 2013 and the Jefferson Davis properties were "done in a dishonest manner to defraud [Pigg's] creditors" and the transfer of Pigg's business was "not in good faith . . . and was done with the intent of avoid [Pigg's] creditors."  No defendant has contested these allegations.  Consequently, the transfers Plaintiff seeks to set aside also could be avoided under section 548(a)(1)(A).[1]

---

[1] Plaintiff briefly mentions South Carolina Code Annotated § "27-33-10" in the amended complaint.  However, this section number appears to be a typographical error, as Plaintiff probably meant South Carolina Code Annotated § 27-23-10, which is South Carolina's Statute of Elizabeth.  Because the transfers could be avoided under 11 U.S.C. § 548(a), it is unnecessary to discuss avoidance under the Statute of Elizabeth.  In addition, Plaintiff has not pleaded 11 U.S.C. 544(b)(1), which allows a trustee to avoid transfers pursuant to the Statute of Elizabeth.

**B. 11 U.S.C. § 550(a)**

Pursuant to 11 U.S.C. § 550(a), "to the extent that a transfer is avoided under section . . . 548 . . . , the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transfer." There are three major consequences of avoidance: "*nullification* of the transfer as against the estate; *preservation* of the transfer for the benefit of the estate; and, in an appropriate case, *recovery* from transferees of the property or from other people who benefitted from the avoided transfer." David G. Epstein et al., *Bankruptcy*, § 6-79 (1992). Section 550 gives a trustee the ability to recover the property transferred or the value of such property from an initial transferee or subsequent transferee once a transfer has been avoided. *Id*. Plaintiff has alleged there were subsequent transfers beyond the initial transfers of property by Pigg. Section 550(a) also gives a trustee the ability to reach subsequent transferees.

Plaintiff does not plead section 550(a) in the amended complaint. She also does not ask for the turnover or recovery of the Jefferson Davis properties, the vehicles and trailers transferred to Neisler in October 2013, or the name, assets, inventory, and property of Custom American Auto Parts transferred to Neisler. Furthermore, Plaintiff does not request recovery under section 550(a) from subsequent transferees. Therefore, in the absence of a further amended complaint, the Court will not order the turnover of this property. Additionally, Plaintiff, in her proposed default judgment, includes in the relief ordered that the Jefferson Davis properties are to be re-titled in the name of Stephen Wayne Pigg. However, re-titling would seemingly be part of recovery under section 550, and Plaintiff did not plead recovery under section 550. She also did not request re-titling in the amended complaint. Consequently, the Court will not recommend re-

titling in the absence of a second amended complaint addressing these issues.  If Plaintiff wants

to seek recovery of property under section 550 or seek recovery from subsequent transferees

under section 550, she will have fourteen (14) days from the entry date of this Order to file a

second amended complaint which requests such relief.[2]

## C. 11 U.S.C. § 542(a)

Plaintiff, in the amended complaint, seeks turnover pursuant to 11 U.S.C. § 542(a) of the

$205,000 being held by Leader and the $95,000 being held by First Community Bank.  These are

funds due to be paid under the agreements entered into December 20, 2013, whereby Pigg

conveyed to Neisler and CAAP, LLC any interest he had, if any, in the parts being sold to Leader

and then Neisler and CAAP, LLC sold the parts to Leader.  Section 542(a) provides:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a
> custodian, in possession, custody, or control, during the case, of property that the
> trustee may use, sell, or lease under section 363 of this title, or that the debtor may
> exempt under section 522 of this title, shall deliver to the trustee, and account for,
> such property or the value of such property, unless such property is of
> inconsequential value or benefit to the estate.

Property that a trustee may use, sell, or lease under section 363 generally is limited to property of

the estate.  *See* 11 U.S.C. § 363(b).  Plaintiff has not pleaded sufficient facts for the Court to

conclude that the parts conveyed to Leader or the funds being held by Leader and First

Community Bank are property of the estate because the Court is unable to trace the chain of

---

[2] In the April 1, 2014 Consent Order, Plaintiff agreed she would abandon any interest the
bankruptcy estate has in the Jefferson Davis properties if she is unsuccessful in recovering them.
She would then consent to the stay being modified so that Kathryn Pigg can pursue her state
court remedies against the properties.  Kathryn Pigg is Stephen Wayne Pigg, Jr.'s ex-wife, a
creditor in his bankruptcy, and a lien holder on the Jefferson Davis properties.  If Plaintiff is
successful in recovering the Jefferson Davis properties, Plaintiff and Stephen Wayne Pigg, Jr.
agreed they would convey these properties to Kathryn Pigg in satisfaction of her mortgage and
$100,000 of her claim.  Of course if Plaintiff takes either of these courses of action, she will need
to follow the appropriate process under the Bankruptcy Code for doing so and provide
appropriate notice to parties in interest.

ownership of the parts back to Pigg.  If Plaintiff pleaded sufficient facts to trace the chain

ownership back to Pigg and the transfers of the parts prior to the transfer to Leader were set

aside, the Court conceivably could order the turnover of the $300,000 under section 542(a).  *See*

11 U.S.C. § 541(a)(6) (providing that property of the estate includes "[p]roceeds, product,

offspring, rents, or profits of or from property of the estate, except such as are earnings from

services performed by an individual debtor after the commencement of the case").  Based on the

pleadings currently before it, the Court is unable to recommend turnover under section 542(a) at

this time.[3]

Alternatively, 11 U.S.C. § 542(b) sets forth that "[e]xcept as provided in subsection (c) or

(d) of [section 542], an entity that owes a debt that is property of the estate and that is matured,

payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee,

except to the extent that such debt may be offset under section 553 of this title against a claim

against the debtor."  If the parts conveyed to Leader were part of the inventory that Pigg

transferred to Neisler that was then transferred to CAAP, LLC, Plaintiff could conceivably set

aside each of these transfers.  Those transfers having been avoided or nullified, the funds Leader

was to pay for those parts conceivably could be considered a debt that is property of the estate

recoverable under section 542(b).  *See also* 11 U.S.C. § 541(a)(6) (providing that property of the

estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate,

---

[3] Contrary to what Plaintiff appears to suggest in her proposed default judgment order, property owned by a limited liability company generally is not property of the estate even if a debtor is the sole member of the company.  *See* S.C. Code Ann. § 33-44-201 ("[A] limited liability company is a legal entity distinct from its members."); S.C. Code Ann. § 33-44-501, cmt. ("Members have no property interest in property owned by a limited liability company."); *Gecy v. Bank of the Ozarks* (*In re Gecy*), Case No. 12-04129-dd, Adv. Pro. No. 13-80090-dd, 2014 WL 2443953, at *8 (Bankr. D.S.C. April 25, 2014); *In re Brittain*, 435 B.R. 318, 322 (Bankr. D.S.C. 2010).

except such as are earnings from services performed by an individual debtor after the commencement of the case").

A third alternative is Plaintiff conceivably could seek to set aside, pursuant to 11 U.S.C. § 549, the post-petition transfer to Leader and seek recovery of the value of the property under section 550. Again, Plaintiff also would need to allege facts establishing the parts sold to Leader were initially owned by Pigg and then transferred. While a defense exists for subsequent transferees who take property for value and in good faith under section 550(b), Leader has only provided value of $95,000 at this point, as it is holding the remaining $205,000 under this Court's March 4, 2014 Order. In addition, it seems unlikely that section 550(b) would allow a subsequent transferee to keep both the property and the value it was to pay for the property. Furthermore, Plaintiff and Leader seemingly could agree the value of the parts transferred is $300,000.

These three alternatives may not be the only possible ways for Plaintiff to recover the $300,000. Plaintiff will have fourteen (14) days from the entry date of this Order to file a second amended complaint addressing the deficiencies described here. Otherwise, the Court may not recommend that Leader be ordered to turnover the $205,000 it is holding or that First Community Bank be ordered to turnover the $95,000 it is holding.

## CONCLUSION

The Court will defer ruling on Plaintiff's motion for default judgment until after the time for filing a second amended complaint runs and, if a second amended complaint is filed, until after the time for answering runs. Plaintiff shall have fourteen (14) days from the entry date of this Order to file a second amended complaint addressing the issues and deficiencies discussed in this Order. If a second amended complaint is filed, Defendants shall then have fourteen (14)

days from the date they are served with the second amended complaint to answer the second

amended complaint.  *See* Fed. R. Civ. P. 15(a)(3); Fed. R. Bankr. P. 7015.  If no second amended

complaint is filed, the Court intends to enter proposed findings of fact and conclusions of law,

recommending: (1) the avoidance of the transfers of the Jefferson Davis properties by Pigg to

Neisler under 11 U.S.C. § 548(a); (2) the avoidance of the transfers of vehicles and trailers in

October 2013 by Pigg to Neisler under section 548(a); and (3) the avoidance of any transfers of

the name, assets, inventory, or other property of Pigg's sole proprietorship, Custom American

Auto Parts, to Neisler.[4]  Additionally, the Court may not recommend that the $95,000 being held

by First Community Bank or the $205,000 being held by Leader be turned over to Plaintiff.  The

preliminary injunction entered in this case on April 23, 2014; the February 18, 2014 Order

entered in Pigg's bankruptcy case; and the March 4, 2014 Order entered in Pigg's bankruptcy

case remain in effect.

AND IT IS SO ORDERED.


**FILED BY THE COURT**
**06/10/2014**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 06/10/2014

---

[4] It is unclear to the Court what purpose is served by avoiding any transfers of the name, assets, inventory, or other property of Pigg's sole proprietorship, Custom American Auto Parts, to Neisler, as Plaintiff does not clearly identify exactly what property she is attempting to recover through this avoidance.

14