# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Stephen Wayne Pigg, Jr.,<br><br><div align="right">Debtor.</div><hr>Joy S. Goodwin, Trustee,<br><br><div align="right">Plaintiff,</div><br>v.<br><br>Custom American Auto Parts, LLC; Charlene Neisler; Stephen Wayne Pigg, Jr.; and Leader Industries,<br><br><div align="right">Defendants.</div> | Case No. 13-07511-dd<br><br>Adv. Pro. No. 14-80037-dd<br><br>Chapter 13<br><br>**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

This matter is before the Court on the motion for default judgment filed by the plaintiff, Joy S. Goodwin, Trustee ("Plaintiff"). In the second amended complaint Plaintiff filed in this adversary proceeding, she seeks to avoid certain allegedly fraudulent transfers under 11 U.S.C. §§ 548(a), 544(b), and 549(a). She also seeks recovery under 11 U.S.C. § 550(a) and turnover under 11 U.S.C. §§ 542(a) and 542(b). Plaintiff named Custom American Auto Parts, LLC; Charlene Neisler; Stephen Wayne Pigg, Jr.; and Leader Industries as defendants. Jurisdiction for this proceeding is premised upon 28 U.S.C. §§ 1334 and 157(a). Venue is proper under 28 U.S.C. § 1409. This adversary proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(H).

1

Plaintiff filed a certificate of service indicating she served Defendants with her amended complaint. No answers were filed, and the Clerk's Office entered Defendants' default on May 20, 2014. Plaintiff moved for entry of a default judgment pursuant to Federal Rule of Civil Procedure 55(b), made applicable by Federal Rule of Bankruptcy Procedure 7055. Plaintiff served her motion for default judgment on Defendants, and no responses were filed. This Court, on June 10, 2014, entered an Order giving Plaintiff an opportunity to address certain deficiencies in the amended complaint. Plaintiff filed a second amended complaint and a certificate of service indicating service of the second amended complaint on Defendants. No answers were filed, and the Clerk's Office entered Defendants' default on the second amended complaint on July 10, 2014.

## **AUTHORITY TO ENTER A FINAL ORDER**

This Court previously has concluded that its entering a final order or judgment on a fraudulent conveyance cause of action against a party who has not filed a claim against the bankruptcy estate would be inconsistent with Article III of the United States Constitution without the express consent of the parties. *See Vieira v. Clutts* (*In re Clutts*), C/A No. 13-00184-DD, Adv. Pro. No. 13-80068-DD, p. 2 (Bankr. D.S.C. Dec. 6, 2013) (citing *Stern v. Marshall*, -- U.S. --, 131 S. Ct. 2594, 2609 (2011); *Granfinanciera v. Nordberg*, 492 U.S. 33, 43-47 (1989); *Official Comm. of Unsecured Creditors v. Nat'l Patent Dev. Corp.* (*In re TMG Liquidation Co.*), C/A No. 7:12-629-TMC, 2012 WL 1986526, at *2 (D.S.C. June 4, 2012); *Lain v. Erickson* (*In re Erickson Ret. Cmty, LLC*), Bankruptcy No. 09-37010-sg11, Civil No. WDQ-11-3736, 2012 WL 1999493, at *3 (D. Md. June 1, 2012); *McCarthy v. Wells Fargo Bank, N.A* (*In re El-Atari*), No. 1:11cv1090 (LMB/IDD), 2011 WL 5828013, at *2-*4 (E.D. Va. Nov. 18, 2011)). Defendants

2

have not expressly consented to this Court entering a final judgment, and Plaintiff has not presented legal authority suggesting entry of a judgment by this Court would be consistent with the Constitution. Therefore, this Court will not enter a final judgment but rather submit proposed findings of fact and conclusions of law to the United States District Court for the District of South Carolina for review. *See Executive Benefits Ins. Agency v. Arkison*, -- U.S. --, 134 S. Ct. 2165, 2170 (2014) ("[W]hen a bankruptcy court is presented with [a claim designated for final adjudication in the bankruptcy court as a statutory matter but prohibited from proceeding in that way as a constitutional matter], the proper course is to issue proposed findings of fact and conclusions of law. The district court will then review the claim *de novo* and enter judgment. This approach accords with the bankruptcy statute and does not implicate the constitutional defect identified by *Stern*."); *In re Standing Order Concerning Title 11 Proceedings Referred Under Local Civil Rule 83.IX.01, Referral to Bankruptcy Judges*, Misc. No. 3:13-mc-00471-TLW (D.S.C. Dec. 5, 2013).

## PROPOSED FINDINGS OF FACT

1.  Defendant Stephen Wayne Pigg, Jr. ("Pigg") filed the chapter 13 bankruptcy underlying this adversary proceeding on December 19, 2013. His bankruptcy is captioned *In re Stephen Wayne Pigg, Jr.*, Case Number 13-07511-dd, and is pending before this Court.

2.  Plaintiff is the chapter 13 trustee assigned to Pigg's bankruptcy case.

3.  Defendant Custom American Auto Parts, LLC ("CAAP, LLC") is a South Carolina limited liability company that was registered with the South Carolina Secretary of State on August 6, 2013. Second Am. Compl. ¶ 3.

3

4. Defendant Charlene Neisler ("Neisler") is the sole member of CAAP, LLC. Plaintiff believes Pigg and Neisler had a close, personal relationship at some point prior to this adversary proceeding being filed. *Id*. ¶ 4.

5. Defendant Leader Industries ("Leader") is a corporate defendant operating in Connecticut. *Id*. ¶ 6.

6. Three years prior to filing for bankruptcy, Pigg owned and operated a business known as Dixie Monte Carlo Depot ("Dixie Depot") in Sanford, North Carolina. On January 14, 2011, Pigg entered into an agreement to sell the name Dixie Monte Carlo Depot and other intellectual property to Leader for $500,000, to be paid in equal installments over a four-year period ($125,000 per year). *Id*. ¶ 7.

7. In approximately January of 2011, around the same time he sold Dixie Depot, Pigg began operating a sole proprietorship selling automobile parts under the name "Custom American Auto Parts." This business was not registered with the South Carolina Secretary of State and income from the business was listed in Pigg's personal tax returns using Internal Revenue Service Form 1040, Schedule C. *Id*. ¶ 8.

8. Between January of 2011 and the summer of 2013, Pigg came to own a number of classic automobile parts. In May of 2013, Pigg owned these parts free and clear of liens. *Id*. ¶ 9.

9. On or about November 8, 2012, Pigg purchased two parcels of real property in Camden, South Carolina—1303 and 1309 Jefferson Davis Highway, Camden, South Carolina 29020 ("Jefferson Davis properties"). Plaintiff believes Pigg purchased these properties for more than $110,000 in cash. Plaintiff believes Pigg's ex-wife holds a lien on the Jefferson Davis properties. *Id*. ¶ 10.

10. On or about May 14, 2013, Pigg transferred title to the Jefferson Davis properties to Neisler for five dollars ($5.00) as a gift. *Id.* ¶ 11.

11. On or about August 6, 2013, Neisler registered CAAP, LLC with the South Carolina Secretary of State as a limited liability company. Neisler was listed as the organizer for CAAP, LLC. Pigg was not a member of CAAP, LLC and did not have an ownership interest in CAAP, LLC. *Id.* ¶ 13.

12. During the summer of 2013, Pigg transferred ownership of the classic automobile parts he had acquired while operating Custom American Auto Parts to Neisler. During the summer and/or fall of 2013, Neisler transferred ownership of these parts to CAAP, LLC. *Id.* ¶ 12.

13. On or about September 24, 2013, Neisler transferred title to the Jefferson Davis properties to CAAP, LLC for no money. *Id.* ¶ 15.

14. In approximately October of 2013, in contemplation of filing bankruptcy, Pigg transferred ownership of the following personal property to Neisler: a 2004 Chevrolet Corvette, a 1969 Dodge Coronet Superbee, a 1983 Chevrolet Monte Carlo, a 2005 Chevrolet Suburban, a 1993 Case 586E fork lift, a 2008 Box Trailer double axle 24 foot trailer, a 2007 Box Trailer double axle 24 foot trailer, a 2001 Box Trailer double axle vendor trailer, and a 1999 car trailer double axle. Neisler paid nothing to Pigg for these items of personal property. *Id.* ¶ 16.

15. Pigg filed his chapter 13 bankruptcy petition on December 19, 2013.

16. On or about December 20, 2013, Pigg, Neisler, and CAAP, LLC entered into a contract with Leader to sell certain classic automobile parts to Leader Industries for $300,000. This transaction consisted of Pigg transferring any interest he had in the parts, if any, to Neisler and CAAP, LLC and then Neisler and CAAP, LLC signing an asset purchase agreement and bill

5

of sale with Leader. The contract provided that Leader would pay CAAP, LLC the $300,000 upon delivery of the parts. The classic automobile parts that were the subject of the contract were some or all of the parts that Pigg acquired while operating Custom American Auto Parts and then transferred to Neisler who then transferred them to CAAP, LLC. The parts sold to Leader had a value of $300,000. *Id*. ¶¶ 9, 12, 14, 18, 19.

17.     In Pigg's initial statement of financial of affairs filed January 15, 2014, Pigg listed no gifts next to paragraph 7, which directed him to "[l]ist all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient." Docket entry 11 in case no. 13-07511-dd. Pigg also listed none of the transfers described above in response to paragraph 10, which directed him to "[l]ist all other property, other than property transferred in the ordinary course of business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case." *Id*. In response to paragraph 18 regarding natures, locations and names of businesses, Pigg listed CAAP, LLC and stated "the business does not have inventory" or accounts receivable. *Id*. Pigg signed his statement of financial affairs under penalty of perjury.

18.     On or about January 8, 2014, Leader issued a check payable to Pigg, Neisler, and CAAP, LLC in the amount of $95,000. This check was deposited into account number *1193 at First Community Bank of South Carolina. The account was in the name of CAAP, LLC. Pigg, Neisler, and CAAP, LLC endorsed the check. Second Am. Compl. ¶ 20.

19.     The Court, on February 18, 2014, entered an Order directing First Community Bank to retain control of the $95,000 to the extent these funds remained in account number

*1193 pending further order of this Court. Docket entry 22 in case no. 13-07511-dd; Second Am. Compl. ¶ 21. Pigg was also directed, pending further order of this Court, "to maintain and not dispose of the automobile parts identified in Annex 1 of the Custom American Auto Parts/Leader Industries Asset Purchase Agreement dated December 20, 2013." Docket entry 22 in case no. 13-07511-dd. Parties were given seven (7) days to request reconsideration of the February 18, 2014 Order. *Id*. No party requested reconsideration.

20.    On or about February 21, 2014, Pigg, Neisler, and CAAP, LLC shipped additional parts to Leader. Second Am. Compl. ¶ 22. The Court held a hearing on March 4, 2014, at which Pigg's counsel in his bankruptcy case consented to entry of an Order directing Leader to retain and hold the remaining $205,000 due to CAAP, LLC, Pigg, and/or Neisler for those parts in trust pending further order of this Court. Docket entry 43 in case no. 13-07511-dd; Second Am. Compl. ¶ 23. This Order, entered March 4, 2014, to which Pigg's counsel consented at the hearing, also contains a finding that "there is a reasonable basis to conclude that [Pigg] failed to abide by the terms of this Court's Ex Parte Order issued February 18, 2014 and transferred automobile parts to Leader Industries pursuant to an Asset Purchase Agreement signed on December 20, 2013." Docket entry 43 in case no. 13-07511-dd.

21.    Pigg filed an amended statement of financial affairs in his bankruptcy case on March 20, 2014. Docket entry 49 in case no. 13-07511-dd. In this amended statement of financial affairs, Pigg again lists no gifts in response to paragraph 7. *Id*. In response to paragraph 10 regarding transfers, Pigg lists the vehicles and trailers he transferred to Neisler in October of 2013 and indicates he received nothing for these transfers. *Id*. Pigg values the 2004 Chevrolet Corvette at $15,100; the 1969 Dodge Coronet Superbee at $5,000; the 1983 Chevrolet Monte Carlo at $1,000; the 2005 Chevrolet Suburban at $7,400; the 1993 Case 586E fork lift at

7

$6,000; the 2008 Box Trailer double axle 24 foot trailer at $1,500; the 2007 Box Trailer double axle 24 foot trailer at $1,250; the 2001 Box Trailer double axle vendor trailer at $800; and the 1999 car trailer double axle at $800. *Id*. Pigg does not list the transfer of the Jefferson Davis properties or any businesses he operated. *Id*. Again, Pigg signed this amended statement of financial affairs under penalty of perjury.

22. Pigg and his bankruptcy attorney signed a consent order entered April 1, 2014, which states Pigg transferred the Jefferson Davis properties to Neisler and CAAP, LLC. Docket entry 63 in case no. 13-07511-dd. As part of this consent order, Pigg agreed to "waive any discharge of any debt under any Chapter of the Bankruptcy Code and agree[d] not to seek or obtain such a discharge." *Id*.

23. Plaintiff filed this adversary proceeding on April 1, 2014.

24. The Court entered a preliminary injunction on April 23, 2014, enjoining Neisler from selling, encumbering or otherwise reducing the value of the Jefferson Davis properties and the vehicles and trailers Pigg transferred to her in October of 2013. Docket entry 11.

25. The transfers at issue were made while Pigg was insolvent or rendered him insolvent. Second Am. Compl. ¶ 33.

## PROPOSED CONCLUSIONS OF LAW

Through their defaults, Defendants have admitted the "well-pleaded allegations of fact" contained in Plaintiff's second amended complaint. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Consequently, the remaining issue before the Court is whether those allegations support the relief sought in this action. *Id*.

8

**A. 11 U.S.C. § 548(a)**

Plaintiff, pursuant to 11 U.S.C. § 548(a), seeks to set aside the following transfers Pigg made prior to his bankruptcy filing: the transfer of the Jefferson Davis properties to Neisler; the transfer of vehicles and trailers in October of 2013 to Neisler; and the transfer to Neisler of "the name, any assets, inventory or other property of any nature, real or personal" that were associated with Pigg's business Custom American Auto Parts, including specifically the classic automobile parts which were later sold to Leader.  Plaintiff asserts these transfers should be avoided under section 548(a)(1)(A) and section 548(a)(1)(B).

Under 11 U.S.C. § 548(a)(1)(B), a "trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer . . . and . . . was insolvent on the date that such transfer was made . . . , or became insolvent as a result of such transfer . . . ."  Based on the allegations in the second amended complaint deemed admitted through Defendants' default, Pigg transferred the Jefferson Davis properties to Neisler for $5 as a gift even though he paid in excess of $100,000 for the Jefferson Davis properties.  With respect to the vehicles and trailers Pigg transferred to Neisler in October 2013, Neisler paid nothing to Pigg for these items of personal property. Additionally, paragraph 28 of the second amended complaint, which is deemed admitted, alleges the transfer to Neisler of the name, assets, inventory, and other property of any nature, real or personal, associated with Pigg's business Custom American Auto Parts, including specifically the parts later transferred to Leader was not for value.  Consequently, there are sufficient allegations to support a conclusion that Pigg received less than reasonably equivalent value for these transfers.  Additionally, Pigg was either insolvent at the time these transfers occurred or

9

became insolvent as a result of the transfers. Second Am. Compl. ¶ 33. Therefore, the Court recommends relief be granted under 11 U.S.C. § 548(a)(1)(B).

Alternatively, section 548(a)(1)(A) allows for avoidance of transfers made with "actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . , indebted . . . ." Plaintiff has alleged Pigg and Neisler had a close, personal relationship prior to his bankruptcy. Based on Pigg's initial statement of financial affairs signed under penalty of perjury, he failed to list all of the transfers at issue. He also indicated he had an interest in CAAP, LLC and stated this business had no inventory and accounts receivable even though the business sold $300,000 worth of parts the day after his bankruptcy filing and was owed $300,000 for those parts. These facts establish many of the badges of fraud this Court often examines when determining whether a transfer was made with actual intent to hinder, delay, or defraud. *See In re Seymour*, C/A No. 10-00377-jw, 2010 WL 9597117, at *3-*4 (Bankr. D.S.C. Aug. 16, 2010); *Adams v. Filter* (*In re Filter*), No. CIV.A. 99-04462-W, 2000 WL 33710873, at *5 (Bankr. D.S.C. June 15, 2000). Moreover, Plaintiff alleges in the second amended complaint that all of the transfers she seeks to avoid were made with the intent to defraud Pigg's creditors. Second Am. Compl. ¶¶ 26-28. No defendant has contested this allegation. Consequently, the Court recommends the transfers Plaintiff seeks to set aside be avoided under section 548(a)(1)(A).

## B. 11 U.S.C. § 544(b)

Plaintiff also alleges the transfers at issue are avoidable under 11 U.S.C. § 544(b). Pursuant to section 544(b)(1), a "trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not

10

allowable only under section 502(e) of this title." Pursuant to South Carolina's Statute of Elizabeth:

> Every gift, grant, alienation, bargain, transfer, and conveyance of lands, tenements, or hereditaments, goods and chattels or any of them . . . , by writing or otherwise, . . . which may be had or made to or for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures must be deemed and taken (only as against that person or persons, his or their heirs, successors, executors, administrators and assigns, and every one of them whose actions, suits, debts, accounts, damages, penalties, and forfeitures by guileful, covinous, or fraudulent devices and practices are, must, or might be in any ways disturbed, hindered, delayed, or defrauded) to be clearly and utterly void, frustrate and of no effect, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

S.C. Code Ann. § 27-23-10(A). Section 544(b)(1) allows Plaintiff to "step into the shoes" of creditors and assert their rights under the Statute of Elizabeth, provided there is a "creditor with a valid unsecured claim in the bankruptcy case who could assert a claim to avoid the transfer." *Hovis v. Ducate* (*In re Ducate*), 369 B.R. 251, 258 (Bankr. D.S.C. 2007); *see also Campbell v. Deans* (*In re J.R. Deans Co.*), 249 B.R. 121, 129 (Bankr. D.S.C. 2000). The trustee's power to set aside transfers is for the benefit of all creditors. *Moore v. Bay*, 284 U.S. 4 (1931). Under the Statute of Elizabeth, conveyances may be set aside by creditors existing at the time of the transfer and by subsequent creditors. *Mathis v. Burton*, 460 S.E.2d 406, 408 (S.C. Ct. App. 1995). For existing creditors, conveyances may be set aside under two scenarios: "First, where the transfer is made by the grantor with the actual intent of defrauding his creditors where that intent is imputable to the grantee, even though there is a valuable consideration; and, second, where a transfer is made without actual intent to defraud the grantor's creditors, but without consideration." *Windsor Prop., Inc. v. Dolphin Head Constr. Co.*, 498 S.E.2d 858, 860 (S.C. 1998).

Plaintiff alleges that Pigg's ex-wife was a creditor of Pigg at the time of the transfers. Second Am. Compl. ¶ 24. Pigg's ex-wife has filed several proofs of claim in his bankruptcy, some of which are unsecured claims that she asserts are entitled to 11 U.S.C. § 507(a)(1) priority as domestic support obligations. Plaintiff also asserts that several other creditors who filed claims in Pigg's bankruptcy were owed money at the time of transfers. Second Am. Compl. ¶ 35. In addition, applying the same reasoning set forth in connection with Plaintiff's cause of action under 11 U.S.C. § 548, the elements for avoiding a transfer under the Statute of Elizabeth pursuant to both an actual intent to defraud scenario and an absence of consideration scenario are met in this case. Therefore, the Court alternatively recommends the transfers be avoided under section 544(b).

**C. 11 U.S.C. § 550(a)**

Pursuant to 11 U.S.C. § 550(a), "to the extent that a transfer is avoided under section 544 [or] . . . 548 . . . , the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." According to the second amended complaint, Neisler was the initial transferee of the vehicles and trailers transferred in October of 2013. To the extent Neisler remains the owner of this property, the Court recommends Plaintiff recover the property under section 550(a). Neisler was also the initial transferee of the Jefferson Davis properties but then conveyed these properties to CAAP, LLC, which is thus an immediate transferee of Neisler, who is the initial transferee. The Court recommends Plaintiff recover the Jefferson Davis properties pursuant to section 550(a). In addition, Plaintiff alleges Pigg transferred to Neisler the name, assets, inventory, and other property associated with Pigg's business Custom American

12

Auto Parts. Neisler subsequently transferred some or all of this property to CAAP, LLC. To the extent either Neisler or CAAP, LLC remain the owner of any this property, the Court recommends Plaintiff recover it under section 550(a).

Finally, with respect to the classic automobile parts that were ultimately sold to Leader, Neisler was the initial transferee of these parts, CAAP, LLC was the immediate transferee from her, and Leader was a mediate transferee. Plaintiff alleges $300,000 is the value of these parts and seeks recovery of that value. Section 550(a) allows a court to order recovery of the property or its value. The Court recommends Plaintiff recover the value of these parts, which is $300,000. The $300,000 Leader agreed to pay for the parts is currently being held by Leader and by First Community Bank. The Court recommends Leader be ordered to transfer the $205,000 it is holding to Plaintiff for the benefit of Pigg's bankruptcy estate and First Community Bank be ordered to do the same with the $95,000 it is holding.

**D. Remaining causes of action**

Having recommended the transfers at issue be set aside under 11 U.S.C. §§ 548(a) or 544(b) and that Plaintiff recover the property at issue under 11 U.S.C. § 550(a), the Court recommends that Plaintiff's causes of action under 11 U.S.C. §§ 549(a) and 542 be dismissed as moot.

### CONCLUSION

For the reasons set forth herein, the Court recommends Plaintiff's motion for default judgment be granted. The Court recommends the following transfers Pigg made prior to his bankruptcy filing be set aside under 11 U.S.C. §§ 548(a) or 544(b): the transfer of the Jefferson

Davis properties to Neisler; the transfer of vehicles and trailers in October of 2013 to Neisler;[1] and the transfer to Neisler of the name, any assets, inventory or other property of any nature that were associated with Pigg's business Custom American Auto Parts, including specifically the classic automobile parts which were later sold to Leader. With the exception of the classic automobile parts sold to Leader, the Court recommends Plaintiff, pursuant to 11 U.S.C. § 550(a), recover for the benefit of Pigg's bankruptcy estate from Neisler and CAAP, LLC the property transferred. With respect to the classic automobile parts sold to Leader, the Court recommends Plaintiff recover pursuant to section 550(a) the value of this property, which is $300,000, and Leader be ordered to transfer the $205,000 it is holding to Plaintiff for the benefit of Pigg's bankruptcy estate and that First Community Bank be ordered to do the same with the $95,000 it is holding. The Court recommends that Plaintiff's causes of action under 11 U.S.C. §§ 549(a) and 542 be dismissed as moot.

In accordance with Federal Rule of Bankruptcy Procedure 9033(b), the parties shall have fourteen (14) days from the date these proposed findings of fact and conclusions of law are served on them to file with this Court and serve on all other parties "written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection." "A party may respond to another party's objections within 14 days after being served with a copy thereof." Fed. R. Bankr. P. 9033(b). In conjunction with filing objections or responses to objections, the parties objecting or responding should designate portions of the record in this case that they want transmitted to the District Court. **Even if she does not have**

---

[1] These vehicles and trailers are more particularly described as a 2004 Chevrolet Corvette, a 1969 Dodge Coronet Superbee, a 1983 Chevrolet Monte Carlo, a 2005 Chevrolet Suburban, a 1993 Case 586E fork lift, a 2008 Box Trailer double axle 24 foot trailer, a 2007 Box Trailer double axle 24 foot trailer, a 2001 Box Trailer double axle vendor trailer, and a 1999 car trailer double axle.

**any objections to these proposed findings of fact and conclusions of law, Plaintiff shall file within fourteen (14) days of being served with these proposed findings of fact and conclusions of law a designation of the record she wants transmitted to the District Court.** Once the deadline for filing objections and responses has passed, these proposed findings of fact and conclusions of law will be transmitted to the District Court along with any objections or responses that are filed and the portions of the record that are designated.

**FILED BY THE COURT**
**07/24/2014**



Entered: 07/25/2014

David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina